ANNA E. M. IMBRIOSCIA, Plaintiff, *v.* FRANK J. QUAYLE et al., Constituting the Board of Trustees of the New York Fire Department Pension Fund and the New York Fire Department Life Insurance Fund, et al., Defendants.

Supreme Court, Trial Term, New York County, April 19, 1950.

*James N. Fazio* for plaintiff.

*John G. Esposito* for Elizabeth Imbrioscia, defendant.

*John P. McGrath, Corporation Counsel (Edward F. Hurley* of counsel), for Frank J. Quayle and others, defendants.

DICKSTEIN, J. This is an action brought for a declaratory judgment against the board of trustees of New York fire department pension funds and the New York fire department life insurance fund, in which the plaintiff claims to be the legal widow of a deceased retired fireman and in which the fireman's former wife, Elizabeth, has been impleaded as a party defendant.

The papers and testimony adduced upon the trial put in issue the plaintiff's claim that she is the widow of the deceased fireman. Her claim to widowhood rests on a marriage ceremony entered into between her and the deceased first in Mexico on September 8, 1925, and sometime later, on October 1, 1925, in Jersey City. The marriage ceremonies followed a divorce decree obtained by the deceased against the impleaded defendant in Mexico.

The deceased retired fireman was married to the impleaded defendant, hereinafter called " Elizabeth ", on September 7, 1902, and they had three children, the youngest of whom is past forty years of age. About 1915 or 1917 they became separated and in March, 1922, Elizabeth, the impleaded defendant herein, was granted a judgment of separation, with the right to receive alimony and support at the rate of $45 per month. This alimony was paid by the deceased until his death on October 28, 1948, for a total period of thirty-seven years. No steps were taken by Elizabeth to sever her marriage relation with the deceased. In September, 1925, the deceased obtained a Mexican divorce on constructive notice to Elizabeth by registered mail. The plaintiff maintains that this divorce was in accordance with all the necessary jurisdictional and substantive requirements of law; that the plaintiff's deceased husband did not go to Mexico solely for the purpose of obtaining such divorce, but that it was his

intention to remain in Mexico, obtain work there and give up his New York domicile permanently. The deceased actually remained in Mexico for a brief period after the divorce, but returned to the United States and took up residence with his new wife, Anna, the plaintiff in this action, in Island Park, New York.

The plaintiff was designated in 1940 as the beneficiary of a $2,000 insurance fund and the plaintiff also claims $600 annual pension benefits as the legal widow of the deceased.

While it is true that the weight of authority in this State would support the contention that the Mexican divorce could not legally terminate the marriage of the deceased, many of the features disclosed upon the trial distinguish this case from the "run of the mill" of Mexican divorces. The testimony by a disinterested witness with whom the deceased was employed at the time he left the United States for Mexico shows that the deceased wanted to go to Mexico — that " he thought he could do better " there as he was not " feeling too good " and he wanted to quit. It was because of the suggestion of this fellow-employee that the deceased did not resign from his position but obtained an indefinite leave of absence. The decedent tried very hard to find work in Mexico, but was unable to do so. When he returned his job had been filled and he was obliged to work in a lesser capacity. I am, therefore, concluding that the deceased did not go to Mexico solely for the purpose of obtaining a divorce and that he intended to settle there permanently. Furthermore, when the deceased did return from Mexico and did re-establish a residence in this State he did not conceal from Elizabeth his new marriage and the plaintiff lived openly and notoriously as his wife. They have lived together for over twenty years; Elizabeth did nothing to change her own status or to obtain any adjudication as to the validity or invalidity of the new marriage, although up to the date of his death, October 28, 1948, the deceased had been separated and divorced from Elizabeth for a total period of thirty-three years. Throughout that period all Elizabeth was interested in was to collect $45 monthly, which was the alimony awarded by the court in her separation action and which sum was paid to her by the Fire Department at the request of the deceased. She took no steps to rectify her status.

Except for reliance upon *Baumann* v. *Baumann* (132 Misc. 217, affd. 224 App. Div. 719, mod. 250 N. Y. 382), Elizabeth urges chiefly that the circumstances of the foreign action render the Mexican decree against our public policy and therefore not entitled to recognition as matter of comity. The proof estab-

lishes, however, that the decree is valid in Mexico, is unassailable here against any permissible collateral attack and offers no opposition to the policy of this State. In fact I find the equities strongly favor the plaintiff, who is entitled to prevail as against Elizabeth in this private controversy.

There are two distinct items of payment claimed by the plaintiff from the fire department relief funds — (1) the sum of $2,000 as life insurance, and (2) the monthly pension of $50. As the deceased was retired on January 9, 1920, the applicable provisions of law are the provisions of section 791 of the Greater New York Charter (L. 1901, ch. 466). Were the authority vested in the court to direct payment of the pension, I would find the circumstances of the care and devotion of this plaintiff to the deceased constitutes overwhelming basis for command for such direction in her favor. However, under those provisions the plaintiff's right to a pension are lodged completely in the discretion of the trustees of the relief fund, so that the granting or withholding of a pension under the provisions of the applicable statutes are solely within the discretion of the trustees. Neither of the parties claiming this pension is, therefore, entitled to it as a matter of right, except to the extent plaintiff is declared to be the widow of the deceased and his duly designated beneficiary.

There is, however, no question as to the right of the plaintiff to the $2,000 insurance. The plaintiff is a *named* beneficiary and would be entitled to it under all circumstances; but since the insurance fund was unable to decide this question until the ascertainment of the rightful claimant of this insurance, the insurance fund is not in default and no interest can be allowed (*Matter of Ittelman* [*City of New York*], 286 N. Y. 150, 153).

Settle findings and judgment on five days' notice to all parties.